UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUDITH A. BLAKE,

                                        Plaintiff,

        v.                                                      **DECISION AND ORDER**
                                                                05-CV-779S
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

        1.      Plaintiff Judith A. Blake challenges an Administrative Law Judge's ("ALJ")
determination that she is not disabled within the meaning of the Social Security Act ("the
Act").  Plaintiff alleges that she has been disabled since May 18, 2002, due to a bulged
disc in her lower back and whiplash.  Plaintiff contends that her impairments have rendered
her unable to work.  She therefore asserts that she is entitled to payment of disability
benefits under the Act.

        2.      Plaintiff filed an application for disability insurance benefits on November 2,
2002. Her application was initially denied and a request for hearing was timely filed.
Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Eugene M.
Bond on April 18, 2005, at which time Plaintiff appeared with counsel and presented
testimony, as did vocational expert James Ryan.  The ALJ considered the case *de novo*,
and on June 13, 2005, issued a decision denying Plaintiff's application for benefits.  On
August 31, 2005, the Appeals Council denied Plaintiff's request for review.  Plaintiff filed
the current civil action on October 31, 2005, challenging Defendant's final decision.[1]

        3.      On May 15, 2006, Defendant filed a Motion for Judgment on the Pleadings

_____

        [1]The ALJ's June 13, 2005 decision became the Commissioner's final decision in this case when
the Appeals Council denied Plaintiff's request for review.

                                                1

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, this Court deemed the motion submitted and reserved decision.   For the following reasons, Defendant's Motion for Judgment on the Pleadings is granted.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).   Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. § § 404.1520, 416.920.   The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.      This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.   If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).   The final step of this inquiry is, in turn, divided into two parts.   First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 29, 36);[2] (2) Plaintiff's back and neck disorders constitute "severe" impairments within the meaning of the Act (R. at 32, 36); (3) Plaintiff's impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4 (R. at 32, 36); (4) Plaintiff retained the residual functional capacity to perform a reduced range of light level work (R. at 33, 36); and (5) Plaintiff was unable to perform any of her past relevant work as a janitor or cashier.  (R. at 33, 35, 37). Considering Plaintiff's status as a younger individual, with a high school education, no transferable skills from her past work, exertional limitations that require her to have a sit/stand option, and a residual capacity for a significant range of light work, the ALJ determined that Medical-Vocational Rule 201.21 directed a finding of "not disabled."  (R. at 35-37).   Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, June 13, 2005.  (R. at 36-38).

10.     Plaintiff's first challenge to the ALJ's decision is that substantial evidence in the record does not support the ALJ's residual functional capacity finding.  In particular,

---

[2] Citations to the underlying administrative record are designated as "R."

Plaintiff argues that the ALJ did not note all of Dr. Peterkin Lee-Kwen's medical findings and failed to properly evaluate the April 27, 2005 Pro-Scan Imaging report.  Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error.  The decision contains an adequate discussion of Dr. Lee-Kwen's findings as well as other medical evidence supporting the ALJ's determination that Plaintiff is not disabled.

The ALJ specifically discussed that Dr. Lee-Kwen, Board Certified in Neurology and Fellowship in Stroke, examined Plaintiff on August 6, 2002, and noted that the claimant was in no apparent distress.  (R. at 30). The ALJ noted that "Dr. Lee-Kwen assessed that the claimant had a whiplash injury associated with persistent neck and lower back pain. She had no evidence of cervical radiculopathy.  He opined that the claimant was temporarily disabled until October 15, 2002." (R. at 30-31).  Dr. Lee-Kwen again examined Plaintiff on November 11, 2002, and again noted that she was in no apparent distress.  (R. at 31).  Plaintiff argues that the ALJ failed to take note of Dr. Lee-Kwen's notation of Plaintiff's neck spasms.  However, the ALJ noted that "Dr. Lee-Kwen's assessment was whiplash injury with persistent neck spasms, and lower back pain secondary to lumbar strain." (R. at 31).  The ALJ further noted that Dr. Lee-Kwen did not opine on November 11, 2002, that Plaintiff was disabled either temporarily or permanently.  (R. at 31).

Beyond this adequate discussion of Dr. Lee-Kwen's findings, the ALJ also discussed the findings of other medical professionals.  On May 18, 2002, Plaintiff was treated at a TLC Health Network Emergency Room after the vehicle she was driving was struck from behind by another vehicle.  (R. at 30). The ALJ noted that "[t]he attending physician's assessment was status post motor vehicle accident with neck pain.  She was treated with Tylenol and released with instructions to follow up with her family doctor in two to three

days." (R. at 30).  On June 6, 2002, Dr. Oscar Lugany reported that a CT scan of Plaintiff's head was unremarkable and a CT scan of her cervical spine was essentially normal.  (R. at 30).  Dr. Michael Licata determined that a June 22, 2002 MRI of Plaintiff's cervical spine showed no evidence of disc herniation, spinal stenosis, or foraminal narrowing.  (R. at 30, 126).  Dr. J. Donald Dishman, a chiropractor and Associate Professor of Clinical Neurosciences at New York Chiropractic College, assessed that Plaintiff exhibited electrophysiologic dysfunction of a S1 radiculopathy, but highly recommended that Plaintiff merely continue with conservative chiropractic measures.  (R. at 31, 176).  After seeing Plaintiff for a consultative evaluation on October 7, 2002, Dr. Edward Simmons, Diplomate of the American Board of Orthopedic Surgery and Fellow of the American Academy of Orthopedic Surgeons and the American College of Surgeons,  echoed Dr. Dishman's recommendation that Plaintiff continue with chiropractic therapy and added a recommendation that she also be involved in some isometric cervical spine strengthening and use a soft cervical collar when needed.  (R. at 31, 128).

An ALJ is not required to reproduce or discuss in his or her decision every medical test, piece of evidence, or finding by a doctor that is contained in the record.  In this Court's view, the ALJ provided an adequate discussion of Dr. Lee-Kwen's findings, including those that Plaintiff claims were not addressed.  Moreover, the ALJ properly identified and discussed the medical evidence he relied on in support of his residual functional capacity finding.  As such, this Court finds that the ALJ's determination in this regard is supported by substantial evidence of record.

11.     Plaintiff next challenges the ALJ's finding that his condition does not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulation No. 4.  (R. at 36).  Specifically, Plaintiff argues that the ALJ should have found

that her impairments are the medical equivalent of the condition defined in 20 C.F.R. Pt. 404 Subpt. P, App. 1 § 1.04.

An impairment is medically equivalent to a listed impairment if "it is at least equal in severity and duration to the criteria of a listed impairment." 20 C.F.R. § 404.1526(a). In a case such as the one presented here, where the claimant does not exhibit one of the findings specified in the listing, medical equivalence may be found if the claimant has "other findings related to [her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1).

Plaintiff argues that the April 27, 2005 Pro-Scan Imaging Report completed by Dr. Gurmeet Dhillon suggests that she meets the requirements of § 1.04. This Court disagrees. Upon review of the report, nothing in it suggests that Plaintiff suffered a compromise of the nerve root or spinal cord. (R. at 217-18). Contrary to Plaintiff's argument, § 1.04 is not met because none of the medical records demonstrate that Plaintiff had a spinal disorder resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. See § 1.04. In fact, Plaintiff's argument that the Pro-Scan Imaging Report establishes a listed impairment is belied by the report itself. The report notes a "3mm right-sided C6-C7 disc herniation effacing the anterior subarachmoid *without compressing the cord.*" As such, the findings of this report buttress, rather than contradict, the ALJ's finding that Plaintiff's impairments did not meet or equal a Listed impairment. Moreover, no "other findings" of equal medical significance are noted.

13.    Plaintiff next argues that the ALJ failed to afford the appropriate weight to her subjective complaints. The ALJ need not rely solely on Plaintiff's subjective complaints; rather, the ALJ is entitled to evaluate the record as a whole in determining Plaintiff's

credibility.  Credibility determination are generally reserved to the Commissioner, not the reviewing court.  <u>Aponte v. Sec'y of Health and Human Svcs.</u>, 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); <u>Carrol v. Sec'y of Health and Human Svcs.</u>, 705 F.2d 638, 642 (2d Cir. 1982) (similar).  The ALJ is required to set forth the essential considerations upon which his or her decision is based, with sufficient particularity to enable the reviewing court to decide whether the disability determination was supported by substantial evidence.  <u>See</u> <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he . . . mention[ ] every item of testimony presented to him or . . . explain[ ] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); <u>see</u> <u>also</u> <u>Miles v. Harris</u>, 645 F.2d 122, 124 (2d Cir. 1981) (holding that the court was unwilling to require the ALJ to explicitly reconcile every conflicting shred of evidence provided that he carefully considered the evidence in reaching his decision).

Here, the ALJ considered Plaintiff's subjective complaints, but concluded that Plaintiff was not credible.  For example, Plaintiff testified that she slept 15-18 hours per day.  (R. at 34, 49).  In evaluating this statement, the ALJ noted that Plaintiff reported in her activity report that she could not sleep due to pain.  (R. at 34, 94).  The ALJ specifically stated that this inconsistency led him to conclude that Plaintiff "exaggerates her subjective symptoms."  (R. at 34).  The ALJ further noted that Plaintiff reported no side effects from her medication.  (R. at 34).  This led the ALJ to reason that even if Plaintiff slept or rested 15-18 hours per day, that it was "of her own choice and not do [sic] her symptoms or side effects from medication."  (R. at 34).

Plaintiff also argues that the ALJ's decision that Plaintiff's medication has no effect on her contradicts her testimony.   However, Plaintiff only points to a portion of her testimony where she identifies the type, quantity and frequency of her medication use.  (R. at 51).  The only information in the record that this Court discerns relates to the effect of medication on Plaintiff is another portion of her testimony where she states that pain medication impairs her ability to function.  (R. at 54).  However, Plaintiff did not give any indication of how the pain medication impaired her, and she further testified that  these medication-related impairments did not cause her to take any less of the medication.  (R. at 54).  Nothing beyond Plaintiff's own brief statement in the record suggests that Plaintiff's medication impairs her in any way.  Therefore, the ALJ appropriately rejected Plaintiff's statement on this topic based on her lack of credibility.

The ALJ completely and appropriately set forth his reasoning for determining that Plaintiff was not credible.  The ALJ was not bound to solely consider Plaintiff's subjective complaints; furthermore, the ALJ could also reject Plaintiff's subjective complaints. Therefore, this Court finds that the ALJ sufficiently articulated his rationale for concluding that Plaintiff's subjective complaints regarding her limitations were not totally credible.  (R. at 37).

14.    Plaintiff's final challenge to the ALJ's decision is that he failed to properly apply the treating physician's rule[3] to Plaintiff's treating orthopedic surgeon, Dr. P. Jeffrey Lewis, who made a notation that Plaintiff was totally disabled and unable to perform any gainful employment.  This notation, however, is not a medical opinion entitled to enhanced weight under the treating physician's rule.  It is well-settled that the disability determination

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

is reserved to the Commissioner, not a treating physician.  <u>See</u> 20 C.F.R. § 404.1527 (conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act).  Consequently, the ALJ is not required to accept a physician's conclusion that an individual is disabled.

15.     After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions contained therein.  This Court is satisfied that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.  Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:      March 22, 2007
            Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge